## L. M. WILEY & CO. *v.* JAMES GRAY et al.

1. HUSBAND AND WIFE: POST-NUPTIAL SETTLEMENT.—The husband and wife, after marriage, may contract for a transfer of property from the husband to a trustee for the separate use of the wife, or the wife directly; and such a settlement, when made *bona fide*, and upon a valuable and adequate consideration, is good against the creditors of, and purchasers from, the husband.

2. SAME: CONSIDERATION OF.—The devotion by the wife of her separate estate to the use of the husband, or the making of a charge on it for his benefit, will support a settlement of the husband's property to the separate use of the wife. See *Lady Arundel* v. *Phipps*, 10 Ves. 130; *Chapman* v. *Emory*, 1 Cowp. 280; *Taylor* v. *Heriot*, 4 Desaussure, 227; *Bullard* v. *Briggs*, 7 Pick. 538; 1 John. R. 261; Atherly Marr. Sett. 163.

3. SAME: SAME: HUSBAND LIABLE TO WIFE, FOR SEPARATE PROPERTY CONVERTED TO HIS USE.—Where there is no trustee appointed to take charge of the separate estate of the wife, the husband is regarded as a trustee for her, and if he, without her consent, appropriate to his own use her separate property, he is her debtor to that extent, and will be compelled by a court of equity, to make ample indemnity to the wife, by a settlement to her use out of his own property.

4. SAME: SAME: WHEN HUSBAND MAY MAKE SETTLEMENT ON THE WIFE OF HIS ESTATE.—Whatever a man may be compelled by law to do, he may do voluntarily; and hence a *bona fide* settlement by the husband for the benefit of his wife, and as indemnity for her property which he has converted to his own use without her consent, is good and valid as against his creditors, if the settlement be reasonable and fair, and do not exceed in value the property of the wife so appropriated to his use.

5. SAME: SAME.—It is no objection to the validity of a post-nuptial settlement, made by the husband for the benefit of the wife, and as indemnity to her for the value of her slaves which the husband has sold without her consent, that sale did not divest her title, for, by claiming under the settlement, and accepting the benefits thereof, she is estopped from setting up her title to the slave.

6. SAME: SAME.—The principle recognized by some of the authorities, that voluntary advances made by the wife of her separate estate, for the use of her husband, will not support, as against the creditors of the latter, a subsequent settlement made by him for her benefit, unless there was a valid agreement between them at the time the advances were made, that she should be secured in that way, or unless the advances were intended to serve as a basis of a settlement to be afterwards made, does not apply to a settlement by the husband as indemnity for the wife's separate property, which he, without her consent, converted to his own use; in such a case, the right of the wife to a settlement does not depend upon any agreement she may have entered into, but upon the indebtedness of the husband to her, and his consequent obligation to discharge it.

APPEAL from the Vice-Chancery Court at Macon. Hon. James F. Trotter, vice-chancellor.

The pleadings and evidence are fully set out in the opinion of the court.

*Thomas Christian,* for appellant,

Contended for the following propositions :

1st. If said deed was voluntary, as charged in this bill, it is void as to existing creditors. *Read* v. *Livingston,* 3 Johns. Chan. R. 481–500 ; *Threewits* v. *Threewits,* 4 Desaus. R. 560 ; Atherly on Marr. Set. 92 ; top page (7 Law Lib.).

2d. "That the recital in the deed, is evidence against all persons claiming under the deed, but not evidence against creditors, without other distinct proof; because such a doctrine would give to every trader a power of excluding his creditors by a recital in a deed, to which they are not parties." Note to *Reade* v. *Livingston,* 3 John. Ch. R. 509.

3d. That a post-nuptial settlement, to be sustained against existing creditors, must be founded on an agreement entered into before marriage, in consideration of marriage ; or upon an agreement or contract entered into between the husband and wife, entered into at the time the wife makes the conveyance of her separate property, for the benefit of her husband ; or the settlement on the wife must be property that comes to the husband, by or through heirship, or distribution to the wife. Ath. Marr. Set. 155, 161 ; *Garlick* v. *Strong,* 3 Paige, 446 ; 3 John. Ch. R. 481 ; 3 Edwards Ch. R. 58 ; 8 Paige, 161.

4th. That where the wife voluntarily parts with her separate estate, for the benefit of her husband, without any agreement or contract between herself and her husband, that he is to make any settlement on her, in consideration of the wife's devotion to his use of her separate property, that it does not form a consideration, for the husband afterwards conveying property to trustees for the use and benefit of his wife. But such a conveyance would be voluntary and fraudulent, as to existing creditors.

5th. That all post-nuptial settlements, of the husband's property on the wife, are upheld, as against existing creditors, upon the

ground of contract, founded upon a valuable consideration, between the husband and wife; and there must be proof to show, that the settlement was made in conformity with said agreement, or there must be facts and circumstances proved, sufficient to raise that presumption, such as the deed being executed at the same time, or about the same time.

6th. That a settlement, made by the husband upon his wife while indebted, although he may have previously expended his wife's separate estate, and used it for his own purposes, and although he may recite that fact, as the consideration for the conveyance, still in law the conveyance will be considered a voluntary one. To make it valid as to subsisting creditors, "there must be an intentional connection between the previous advances and the subsequent deed."

7th. That the sale or conveyance by the husband alone, of his wife's separate property, does not deprive her of her title to the property, but she may sue and recover the property back, with the rents, issues, and profits; and such sale by the husband can form no consideration for a conveyance of his own property to his wife, which will deprive subsisting creditors of their rights.

*C. R. Crusoe*, for appellees.

The only point involved, is the validity of the conveyance from James B. Gray to James H. Turner, as trustee, of date 10th March, 1851.

It recites on its face, and is proven by the will of Peter Walker, and depositions of Walker and Simpson, that the consideration of this deed, was an indebtedness due the wife by the husband, for separate property of the wife, used by the husband; and by agreement, this property specified was conveyed to a trustee, for the wife, in satisfaction of the indebtedness of the husband thus created. The wife was a creditor of the husband, and the conveyance to her use was made prior to the rendition of the judgment of Wiley & Co. This deed is valid as against creditors, and there is no equity in the property being subjected to the judgment.

"Conveyances of property by a husband, in trust for his wife and her issue, will not be set aside as voluntary, or fraudulent, where the husband has received, and applied to the payment of his

debts, or other use, funds or property of the wife, even though the value be not exactly the same. *Taylor* v. *Heriot*, 4 Desaus. R. 227; 7 Pickering R. 538.

Thus, in the case of *Bullard* v. *Briggs*, 7 Pick. R. 538, the court say: " It is undoubtedly clear, that a mere voluntary settlement, made by a husband upon his wife, during marriage, he being in debt, is void against creditors; but it is equally clear, that a conveyance, made in trust for the wife, after marriage, upon the transfer to him, by the wife, of an equivalent out of her property, will be established, both in law and equity; and it ought to be so," &c.

Again. A wife, by property of her own, may become a purchaser from her husband, so as to support a post-nuptial settlement. 1 John. Ch. R. 261; 3 Edwards Ch. R. 58; Gilmer Va. Cas. 209; 1 Dev. Eq. 185; Story Eq. § 1373.

This deed was, by agreement of the parties, made. The amount of the separate estate used by the husband, was of equal value to the property conveyed in deed. The conveyance was *bona fide*, and on valuable consideration, and made prior to the judgment of Wiley. The wife was the · prior creditor; and, so far as the proof shows, there is no evidence but that Gray, at date of conveyance, had ample property to pay all liabilities, &c. 3 Cushman, 66.

SMITH, C. J., delivered the opinion of the court.

This suit was brought in the Vice-Chancery Court at Macon, to set aside a conveyance, for fraud, and to subject the property to the satisfaction of a judgment at law, recovered by the complainants against the defendant Gray.

The bill charged that the defendant Gray, in the year 1850, was indebted to the complainants in a large sum of money, for which they brought suit, and recovered judgment on the 13th of October, 1852, for $1149 60, upon which execution issued, and was returned *nulla bona;* that said defendant was utterly insolvent, and that nothing could be made out of him. That defendant was the owner of certain slaves, and while so indebted, on the 10th of March, 1851, that he conveyed the said slaves to one Turner, in trust for defendant's wife, Mrs. Virginia Gray. That the slaves conveyed in trust to Turner were delivered into his possession, and

that the conveyance purported to be in payment for, or in lieu of, property, which was the separate estate of Mrs. Gray, and which the defendant had appropriated to his own use. That the property conveyed in trust, greatly exceeded in value the amount of the debt alleged to be due by Gray to his wife. And further, that the conveyance of the said slaves was fraudulent and void as to the complainants, who, when it was made, were *bona fide* creditors of the grantor.

The answer admits that the defendant, Gray, was indebted to complainants when the trust deed was executed, and the recovery of the judgment as alleged in the bill. It denies, expressly, that Gray was insolvent when the conveyance was made. It admits the execution of the trust deed at the time alleged, but denies that it was voluntary, or intended to hinder, delay, or defeat the claims of creditors. It avers that said conveyance was made for a full and valuable consideration, which is truly stated in the deed; that Gray was justly indebted to his wife for the proceeds of the sale of two negroes, and for other money which belonged to her in her separate right, which he had received and applied to his own use; that the conveyance to the trustee was made in consideration, and intended as an indemnity or repayment of the amount which Gray was thus indebted to Mrs. Gray; and that the property conveyed and settled to her use, did not exceed in value the amount of the said debt.

No evidence was offered by the complainants; of consequence, no proof was adduced in support of the allegation in the bill, that Gray was insolvent when the settlement was made.

The evidence for the defendants, showed that Mrs. Gray was possessed of separate property, consisting of securities for money and two slaves; that the money was collected by Gray, that the slaves were sold by Gray, and the purchase-money was received by him, and that the whole amount of the money, thus received by him, was about equal to the value of the property settled upon Mrs. Gray.

A decree was rendered, sustaining the validity of the settlement, and the bill was dismissed; hence this writ of error is prosecuted.

The capacity of a husband and wife after marriage, to contract,

for a *bona fide* and valuable consideration, for a transfer of property from the husband to a trustee for the benefit of the wife, or to her directly, is not now a subject open for discussion. In transactions of this character, the person claiming under the conveyance stands in the attitude of a purchaser. For that reason, post-nuptial settlements, not founded upon a valuable consideration, or which are made for fraudulent purposes, are void as to third parties. And for the same reason it is held, and the doctrine is well settled, that such settlements, when made *bona fide* and upon a valuable and adequate consideration, are good against creditors and purchasers. 25 Law Lib. 81; Atherly on Marr. Set. 156, 162, and cases referred to.

As it is not material to the validity of a post-nuptial settlement upon a wife, that the husband should not be indebted at the time when he made the settlement, the true point of inquiry here, and it is the question presented by the first exception taken to the decree, is, whether the conveyance was made upon a valuable and fair consideration, so as to repel the presumption of fraud. Atherly Marr. Sett. 155, 161.

It is the settled doctrine in England and this country, that the devotion of her own property, by a wife, to the use of her husband, or the making a charge upon it for his benefit, will support a settlement by the husband in favor of his wife. *Lady Arundel* v. *Phipps*, 10 Vesey, 130; *Chapman* v. *Emory*, 1 Cowp. 280; Atherly on Marr. Sett. 163 (25 Law Lib. 85); *Taylor* v. *Heriot*, 4 Desaus. 227; 1 Johns. Chan. Rep. 261; *Bullard* v. *Briggs*, 7 Pick. 538.

But here it is insisted that the settlement was not based upon a consideration arising from previous advances made by Mrs. Gray, or from a devotion of her separate property to the use of her husband; that the money was appropriated, and the slaves sold, without her consent; that her title to the latter has in nowise been affected by such sale; and that she has now the unquestioned right to sue for and recover them from the purchasers. Having made no advance to her husband, nor released any right to her property for his benefit, it is contended that she is not to be regarded as a *bona fide* purchaser for a valuable consideration; and hence, that the settlement is fraudulent and void as to existing creditors.

These positions are more plausible than sound. There was no trustee appointed to take charge of the property of Mrs. Gray.

Gray, therefore, in virtue of his marital relation, was entitled to the possession of it, and, in reference thereto, he occupied the character of a trustee, and as such was responsible to Mrs. Gray. And if, as insisted by counsel, her funds and her slaves, without her assent, were appropriated to his own use by Gray, there can be no doubt that, upon application to a court of equity, he would have been compelled to make ample indemnity, by a settlement out of his own property. It is a general principle, that whatever a man may be compelled by law to do, he may do without the intervention of the court; and his act will be legal and valid. If, therefore, the settlement actually made, was reasonable and just, and such as a court of equity, in view of all the circumstances, would have ordered, it will certainly not be avoided upon the ground that it was voluntary and fraudulent as to existing creditors.

Further, it was not material, whether Mrs. Gray's funds and property were appropriated by Gray, with or without her consent. As in either event, she was, in an equitable point of view, a creditor of Gray, to the amount of the value of the property, which he had converted to his own use. Upon the ground taken by counsel, that her title to the slaves had not been divested, it is therefore, clear, that she had, at her election, the right to proceed against Gray, or to recover the slaves by suit against his vendee. But as she could not have relief against Gray, and at the same time recover the slaves, it seems clear that, by accepting the settlement and claiming under it, she was estopped from setting up any claim or title to them. Her acceptance of the settlement, was in effect, a release of her title ? Which, according to all the authorities, was a consideration of value, sufficient to sustain a settlement of this character.

What has been above said, renders it unnecessary to examine the question, raised by the second and only remaining exception to the decree. For if, where a husband has applied the funds, and converted the property of his wife to his own use, without her consent, the debt or obligation thereby incurred, is a valuable consideration for a post-nuptial settlement; it is manifest, that the principle contended for by counsel, does not apply to the facts of this case. It is clear that it can only apply to cases, in which voluntary advances have been made by the wife to the husband, or where there was a

devotion of her property to his use, or the making a charge upon it for his benefit. In such cases it has been held, but the rule is not uniform, that it must appear either that there was an agreement between the husband and wife, at the time the advances were made, to secure her by settlement, and such an agreement as it would be obligatory upon him to perform; or that the parting with her own property, or incumbering it for her husband's benefit, was intended to serve as a consideration for a settlement, to be afterwards made by him; and that the deed of settlement when executed had reference thereto; otherwise the conveyance would be considered as merely voluntary, and consequently invalid as to existing creditors. But here the settlement rests for its validity, upon the equitable right of the wife to be indemnified or repaid by the husband, out of his own property; and his consequent obligation to secure her by a settlement of property to her use, equal in value to the money and slaves, which he had applied and converted to his own use.

The allegation in the bill that, when the settlement was made, Gray was totally insolvent, was expressly denied; and no evidence was offered to sustain the bill in this respect. The fact admitted in the answer, that Gray was then indebted to the appellants, is not of itself sufficient ground for questioning the *bona fides* of the settlement, which as we have seen was made upon a valuable consideration. The property conveyed in settlement was about equal in value to the debt, which was due from Gray to his wife. Upon the whole, we think the decree of the vice-chancellor ought to stand; and, therefore, order it to be affirmed.