Duhme & Co. vs. Young, &c.

CASE 88—PETITION EQUITY—MAY 25.

# Duhme & Co. vs. Young, &c.

### APPEAL FROM HARRISON CIRCUIT COURT.

1. A voluntary deed made to a wife or child, with the fraudulent intent as to existing debts, or with a design to future indebtedness, would be pronounced void, both as to prior and subsequent creditors, because of the ill faith and corrupt motive; but subsequent creditors cannot impeach it upon the mere ground that it was voluntary. It must be shown to have been fraudulent or made with a view to future debts.

2. The mere fact of indebtment at the time does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question whether it is fraudulent or not is to be ascertained, not from the mere fact of indebtment at the time, but from all the circumstances of the case. (*Story's Equity*, sec. 362.) The want of a valuable consideration may be a badge of fraud; but it is only presumptive and not conclusive, and may be met and rebutted by evidence on the other side.

3. If the grantor, at the time of making the settlement, is insolvent or in doubtful circumstances, the conveyance would be within the statute of frauds and void; but if he be not indebted to such extent as that the conveyance will deprive the creditors of an ample fund for the payment of their debts, a good consideration will be sufficient to support the deed, although voluntary, for it is free from fraud. A distinction, however, has been made, so far as creditors are concerned, between a voluntary conveyance to the grantor's children and to strangers. (*Enders vs. Williams*, 1 *Met.*, 347.)

4. The statute of frauds was never appplied to purchases by a debtor, but has been construed to operate only on conveyances *by him*. (*Doyle and others vs. Sleeper and Alsop*, 1 *Dana*, 531, *and authorities cited*.)

5. On the marriage of an administratrix, her authority as such ceases.

W. W. TRIMBLE,                          For Appellants,

CITED—

8 *Dana*, 184 ; *McLaughlin vs. Daniel.*

7 *Dana*, 264; *Stephens vs. Barnett.*

1 *Monroe*, 251; 7 *J. J. M.*, 147; 5 *B. Mon.*, 490.

1 *Zill & Johnson*, 270; *Heythorp vs. Hook.*

5 *Randolph*, 51; *Coleman's adm'r vs. Mundy.*

3 *Dana*, 292; *Stroud's heirs vs. Barnett's adm'r.*

5 *Dana*, 411; *Pilkington's executrix vs. Gaunt's adm'x.*

5 *Dana*, 407; *Montmolin vs. Gaunt's adm'x.*

8 *B. Mon.*, 508.

1 *Dana*, 533; *Doyle, &c., vs. Sleeper.*

*Story's Equity*, sec. 361.

4 *Dana*, 253; 8 *Dana*, 513.

2 *Ben. Mon.*, 246; 1 *Metcalfe*, 350.

3 *J. J. M.*, 601; *Williams vs. Preston.*

3 *Johnson's Rep.*, 168.

WARD,                                    For Appellees.

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

Prior to the 12th of August, 1850, Bushnell Willey died intestate, in the county of Bourbon, but was a resident of the county of Harrison. On the day above named, administration on his estate was granted by the Harrison county court to Susan Willey, his widow.

In less than one year after the grant of administration to Mrs. Willey, she intermarried with W. S. Young, and it seems they proceeded to administer the estate until 1855, when they had a settlement of the administration with the presiding judge of the Harrison county court, by which it appears that the administratrix had paid off debts of decedent two hundred and seventy-five dollars and thirteen cents more than she had received assets.

That settlement was, in proper time, confirmed by the Harrison county court, and its correctness not questioned nor impeached until the 28th of November, 1859, when an action was brought by appellants against Young and

wife, her surviving surety, and the personal representative of the deceased surety in her administration bond, on quite a number of debts alleged to have been owing by Willey in his lifetime to them, and to coerce payment thereof from the defendants in the action; and in May, 1860, recovered judgment against Young and wife for the amounts of their several demands, to be levied of assets unadministered.

After the recovery of the judgment just named, they instituted another action against the same defendants, alleging that Young and wife had not accounted for the whole of the personal estate of their intestate; that they had in their possession a valuable negro woman and children of the estate of said intestate, worth between four thousand dollars and five thousand dollars, and of value sufficient to pay their debts; make their former judgment an exhibit; charge that Young and wife had wasted and failed to account for four thousand dollars of estate which belonged to intestate, and finally recovered judgment against the defendants for that sum, with interest from the 12th of November, 1860, the date of their judgment.

On appeals prosecuted by the defendants to said actions, both of said judgments were reversed by this court in June, 1863.

Upon the return of the cause to the court below; appellants filed an amended petition, alleging that Young and wife had failed to account for all the assets; that they had converted some slaves of intestate, of value sufficient to pay their debts, and sought a judgment for the value of said slaves.

In an amended petition, they allege that Willey, at his death, was the owner of two hundred acres of valuable land in Harrison county, purchased of Sail, his wife's

father, at fifty dollars per acre, and then worth eighty dollars per acre; that Sail had executed to Willey a title bond for said land, the purchase money having been all paid by Willey; that before his death, and in his absence, Sail had conveyed the land to his daughter, Mrs. Willey, without the knowledge or consent of her husband, in fraud of his rights, and with the fraudulent intent to cheat, hinder, and delay creditors of Willey; that he never was in the county after it was executed, and had no knowledge of its existence. They allege that Young and wife have been in possession of the land ever since the death of Willey, using it, and taking the profits, which have been very valuable; and to the extent of the value of the use and occupation of the land, seek to make them responsible; and also ask for a sale of as much of the land as may be necessary to pay their debts.

In July, 1863, administration *de bonis non* was granted, by the Harrison county court, to Joseph B. McClintock, on the estate of said Willey, who was made a defendant by the amended petition, and the cause transferred to the equity docket.

On the hearing, the court below rendered judgment against McClintock, administrator *de bonis non*, for four thousand nine hundred and twenty-seven dollars and fifty-one cents, with interest from the 21st of October, 1859, till paid, and costs, to be levied of assets in his hands unadministered; and as to the other defendants, dismissed the plaintiff's petition without prejudice at their costs; and that judgment they now seek to reverse.

It is shown by the settlement of the administration accounts of Mrs. Young, and of herself and husband, that she sold the perishable property, and a part of the slaves of decedent, sufficient to pay his debts, so far

as she had any knowledge of outstanding claims. It is alleged in the original petition that she had notice of appellant's debts; but she denies any knowledge of them, and the allegation of notice is not proved; and the *non*-existence of notice is made very probable from the facts developed by appellants themselves. As early as 1851, they instituted proceedings in the *State of Illinois*, to enforce the collection of their debts; an administrator on the estate of intestate was apppointed in that State, and suit brought to subject various tracts of land belonging to intestate, in different counties in said *State,* to the satisfaction of these demands. This litigation was continued until *October*, 1857, when the credit seems to have been entered for the proceeds of the lands sold, or for a part of the proceeds; and from the quantity of land named, it would seem there was enough to have satisfied the demands of appellants; and the apparent sufficiency of that part of intestate's estate to pay this indebtedness, when no other creditor seems to have been looking to said lands, and may not have had any knowledge of them, would indicate that the appellants were not taking any interest in the manner the estate was administered in Kentucky, and gave themselves no concern on the subject.

Neither Mrs. Young, before her marriage with Young, nor herself and husband since then, sold any more of the slaves of intestate than were necessary to pay debts of which they had notice. Upon her marriage, her authority as administratrix ceased, as this court decided; no admintrator *de bonis non* was appointed until July, 1863; no one either sought or was authorized to take the slaves from her custody up to that time; and if no debts required it, they were rightfully in her possession; she supposing, doubtless, in the absence of any knowledge of appel-

lants' claims—and there is no allegation that there are any others against the estate—that she was entitled to dower in them, and the others belonged to the two children of inestate, both of whom were infants, and, as we must presume, lived with her. She and her husband retained them where they could have been easily found, and subjected to any judgment that appellants might have recovered against the proper representative of intestate, until they were emancipated by the amendment to the Constitution of December, 1865, without any particular fault of Young and wife, and before appellants were prepared to enforce the collection of their claims by a valid judgment and execution; and there is no evidence that they had any other assets of intestate in their hands unaccounted for. The negroes were a breeding woman and her children, some of whom were born after the death of intestate, and it is not alleged, or. proved, that their services were worth more than the cost of raising the children.

If, after administration *de bonis non* was granted to McClintock in July, 1863, the slaves were of any appreciable value, we are not prepared to say that he should be made responsible for them because he failed to take them in his possession, or to institute proceedings to recover them, especially in the disturbed condition of the country at that time, and the precarious tenure by which slave property was held, of which courts will take judicial notice.

Whether the land purchased by intestate of Sail, and conveyed to Mrs. Young, should have been subjected to appellants' demands, is the next question to be disposed of, which involves an inquiry whether the mere indebtment of a party constitutes, *per se*, conclusive evidence of fraud in a voluntary conveyance, procured to be made

to his wife, of property purchased and paid for by him, so far as the creditors, to whom he is *then* indebted, are concerned; and also, if prior creditors are entitled to relief, will those holding debts created *subsequent* to the conveyance be allowed to come in and participate in the relief granted to *prior* creditors.   This question arises from the fact, that, of the various debts held by appellants against intestate at his death, the debt for one thousand five hundred and eighty-two dollars and fourteen cents, evidenced by the note of May —, 1849, is the only one which had been contracted prior to the date of the deed to Willey's wife.

It was formerly held, by some of the most enlightened judges of England and America, that if a voluntary settlement be made on the wife, or children of a grantor, who is indebted at the time of the settlement, it was presumed to be fraudulent, and no circumstance would permit the pre-existing debts to be affected by the settlement.   And in *Read vs. Livingston* (3 *Johnson's C. R.*, 481), Chancellor Kent, at the conclusion of an elaborate opinion, declared, as the settled doctrine on the subject, "that fraud in a voluntary settlement was an inference of law, and ought to be so, so far as it concerned existing debts.   But as to subsequent debts, there was no such necessary legal presumption, and there must be proof of fraud in fact; and an indebtment at the time, though not amounting to insolvency, must be such as to warrant the conclusion."   This opinion has been overruled in New York, and the doctrine, thus broadly laid down, almost universally exploded.   A voluntary deed, made to a wife or child, with the fraudulent intent as to existing debts, or with a *design* to future indebtedness, would be pronounced void, both as to prior and subsequent creditors, because of the ill-faith

and corrupt motive. But subsequent creditors cannot impeach it upon the mere ground that it was voluntary. It must be shown to have been fraudulent, or made with a view to future debts.

The rational and true doctrine on the question is laid down by Judge Story (*Story's Equity, section* 362), as follows: "The mere fact of indebtment at the time does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors."

The question, whether it is fraudulent or not, is to be ascertained, not from the mere fact of indebtment at the time, but from all the circumstances of the case; and if the circumstances do not establish fraud, the voluntary conveyance is deemed to be above all exception. The language of the court in the case in which these principles are enunciated is as follows: "A deed from a parent to a child for the consideration of love and affection is not absolutely void as against creditors. It may be so under circumstances; but the mere fact of being indebted to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to a child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a *valuable* consideration may be a badge of fraud, but it is only presumptive, and not conclusive evidence of it, and may be met and rebutted by evidence on the other side." And he further remarks: "This language, it should be remembered, was used in a case where the conveyance was sought to be set aside by persons claiming as judgment creditors upon antecedent debts."

The doctrine upon the subject, as settled by this court, and we see no reason for a departure from it, is, if the grantor, at the time of making the settlement, is insolvent or in doubtful circumstances, the conveyance would be within the statute of frauds and void; "but if he be not indebted to such an extent as that the conveyance will deprive the creditors of an ample fund for the payment of their debts, a good consideration will be sufficient to support the deed, although voluntary, for it is free from the imputation of fraud."

In *Enders vs. Williams*, 1 *Met.*, 347, it is said: "A distinction, however, has been made, so far as creditors are concerned, between a voluntary conveyance to the grantor's children and to strangers. In the former case, where there is no actual fraudulent intent, and the gift is a reasonable advancement to the child, considering the donor's condition in life, and there is ample estate left unencumbered for the payment of his debts, then such conveyance will be valid even against antecedent creditors."

In the case at bar, it is not alleged that there were any debts owing by intestate at the time the conveyance was made to his wife; and it appears, from the notes sued on, that but one of the debts now claimed and sued for had been then contracted, and, from what is exhibited in the record, the husband had ample unencumbered estate to pay that debt. Indeed, it is not alleged that the deed was procured to be made to the wife with any design on the part of the husband to prevent his creditors from collecting their debts, or with any fraudulent purpose. And, although Curry proves the deed was made to the wife by intestate's vendor, by his express direction, the charge is not made of a fraudulent intent on his part; that there was not a sufficiency of unencumbered property left to

pay the debts of intestate, nor that the settlement was unreasonable, considering the donor's condition in life. The allegations of the petition, if there were no other difficulties in the way, were insufficient to set aside the conveyance of the land.

It should be observed, that the conveyance in this case was not made by Willey to his wife, but by his vendor; and, in *Doyle and others vs. Sleeper and Alsop,* 1 *Dana,* 531, this court held, that the *statute* was never applied to purchases by a debtor, but has been construed to operate only on conveyances *by him* (which see, and authorities cited to sustain the position). But, for reasons before stated, there was no error in the judgment prejudicial to appellants.

A cross-appeal has been allowed, but no brief has been furnished; consequently, the cross-appeal will not be considered, but the same is dismissed, and judgment *affirmed* on original appeal.