## Case No. 13,071.

### SMITH v. KEHR et al.

[2 Dill. 50; [1] 7 N. B. R. 97; 6 West. Jur. 451.]

Circuit Court, E. D. Missouri. 1872.[2]

BANKRUPTCY—VOLUNTARY CONVEYANCE BY HUSBAND TO WIFE—ARTICLES OF SEPARATION—SUBSEQUENT RECONCILIATION — HOMESTEAD EXEMPTION.

1. A and his wife separated and executed articles under which A gave for his wife's benefit $2,000 in cash, and his notes for $5,000, secured by deed of trust on his realty, she and her trustee covenanting in consideration thereof that she would not claim maintenance from A, or contract debts on his account, or claim dower in his estate. After six weeks' separation, the parties came together again and executed new articles, declaring the former articles void except so far as they created a separate estate in favor of the wife. They lived together for several years thereafter, when A fled the country and was adjudged bankrupt on a creditor's petition. Held, in a suit by the assignee in bankruptcy of A, that the conveyance for the wife's benefit was voluntary and therefore void as against creditors.

2. Held, also, that subsequent as well as antecedent creditors should be admitted to share pro rata in the proceeds of the property.
[Cited in Phelps v. Sellick, Case No. 11,079.]

3. The conveyance, though void as against creditors, was good as between husband and wife, and conveyed the husband's right of homestead. Held, therefore, that the wife was entitled to a homestead allowance out of the proceeds of the property.
[Cited in Fellows v. Lewis, 65 Ala. 343.]

[4. Cited in Re Hufnagel, Case No. 6,837, to the point that a party who has levied an execution upon the property of the bankrupt before adjudication ought not to proceed to a sale without the permission of the court, and if he does so the sale may be set aside, and he may be held liable for the actual value of the property, regardless of the amount realized upon such sale.]

This is an appeal in bankruptcy from a decree of the district court for the Eastern district of Missouri.

The appeal is taken by the assignee [John Ford Smith], by Mrs. Meyer, the wife of the bankrupt [Martin Meyer], and by Vogler, a creditor. Mrs. Meyer claims that the district court erred in not allowing her the amount of the notes for $5,000 given to her by the bankrupt under the articles of separation; the assignee complains of so much of the decree as allows Mrs. Meyer's $1,000 as a homestead exemption, and Vogler insists that the court erred in not recognizing that he was entitled to priority of payment over the other unsecured creditors of the bankrupt. The facts of the case and the grounds of decree which was rendered in the district court were carefully stated in the following opinion of the district judge delivered at the time:

TREAT, District Judge. In the fall of 1867, the bankrupt executed to [Edward C.] Kehr, as trustee, a deed to secure the payment of $5,000 to his wife's trustee. Kehr,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Affirmed in 20 Wall. (87 U. S.) 31.]

under the deed of trust and pending bankruptcy proceedings against Meyer, sold the property to her trustee for her benefit, for a sum greatly less than the value of the property, but had not delivered the deed when this bill was filed.

The bill alleges that there was no consideration for the deed to. Kehr, and that said deed was fraudulent as to creditors, said Martin Meyer being largely indebted at its date. There was a prior deed of trust on the property to secure the payment of $2.000 and three interest notes for $180 each, one of which interest notes was due when the deed was made to Kehr.

Pending this bill the property was, by order of court, sold under the prior deed of trust, the assignee in bankruptcy joining in said order, reserving to the parties the right to proceed against the fund. At that sale the property brought $10,500. At the previous sale by Kehr, it brought only $5,000, subject, however, to the deed of trust. As the sale by Kehr was made after the petition in bankruptcy was filed, and without any action had thereon by this court, that sale would have been set aside if the subsequent sale under a prior deed of trust had not passed the title. As it is, Kehr will be perpetually enjoined from delivery of deed to Mrs. Meyer's trustee. The controversy now is against the fund. It is not disputed that the amount due under said prior deed of trust must first be paid. Meyer, at the time of making the deed for his wife's benefit, was indebted to Vogler, who has interpleaded, in the sum of $7,126.

In August, 1867, Meyer and wife separated. By formal articles of separation, it was agreed, among other things, that he should pay to Schæffer, as her trustee, $7,000 for her maintenance, and she and her trustee covenanted that she would not claim thereafter any maintenance or support from said Meyer, but that said $7,000 should be in full satisfaction for any claim for alimony; that she would contract no debts on his account; would make no claim to any interest or dower in his estate, &c. It was also agreed that the separation thus voluntarily stipulated should not be considered as any confession of guilt on the part of either, and that neither should be precluded from an action for divorce, if any cause therefor existed.

On the execution of these articles, Meyer paid to Schæffer, as his wife's trustee, for her benefit. $2.000 in cash, and executed the deed to Kehr to secure the payment of the other $5,000 with interest. On the 18th of October, 1867, Meyer and wife and Schæffer made another agreement, whereby Meyer and wife agreed to live together again, forgiving all past differences and to rescind all the stipulations of the articles of separation except so much thereof as created a separate estate for her benefit, with the modification that while they lived together Meyer should not pay interest on said $5,000. It was also

agreed that the new arrangement should be "a complete condonation." Afterward Meyer and wife continued to cohabit as if no separation had occurred, and they occupied the property in controversy until he fled from the country. Does the condonation operate as a revocation of the post-nuptial settlement? The agreement of October prevents such a result, further than that, it rids the case of the question, whether the covenant by the trustee in the articles of separation made the consideration for the conveyance "valuable and meritorious," instead of "purely voluntary." The effect of the deed for $5,000, and of the October agreement, is to leave that deed a purely voluntary conveyance, unless there entered into the consideration other elements than appear on the face of the papers. It is contended by her counsel that there were such elements.

His views are as follows: Mrs. Meyer was the widow of John Johle, and administratrix of his estate when she married Martin Meyer. He, on her marriage with him, became administrator de bonis non. The property belonging to Johle's estate was sold by order of the probate court, and the realty was bought by Meyer for $2,200—a sum far less than its real value—with the understanding that when Meyer resold it he would settle on his wife whatever profit was made thereon. It is also alleged that the profit realized by Meyer from that transaction and from the estate of Johle was about $5,000, and, pursuant to his repeated promises, the deed of trust to Kehr for her benefit was made, and therefore should be upheld in equity as a valid post-nuptial settlement. Without discussing the doctrines invoked with regard to post-nuptial settlement, it is sufficient to state that they are inapplicable to the facts before the court. The settlement of her account in the probate court as administratrix shows $6,765 in her hands belonging to the estate.

Mr. Meyer's settlement shows that he was charged with that balance, and that on final settlement Johle's estate was indebted to him $7,430. Hence, unless those records were falsified, nothing came to Meyer as belonging to that estate. The sale of realty was made by the clerk of the probate court, by order of that court, and as Johle left two children, any such pretended agreement between Meyer and wife as is alleged, whereby he was to acquire that property at less than its real value, and give to her the difference between the price at which he bought it and that at which he might sell it, would have been, if made, a palpable fraud on creditors and heirs. But there is no evidence to support such allegation; nor is there any evidence that the real estate was sold by Meyer for more than he paid for it. The deeds offered in evidence, together with the abstract of titles, indicate that the property bought by Martin Meyer at the probate sale he sold the same day to F. J. Harke; but as the deed to Harke is not produced, the price does not appear. There is a deed of trust

from Harke reciting the sale to Meyer, and by Meyer to Harke, as occurring the same day, and as being for same property, said deed of trust being to secure three notes, for $450 each, as part of the purchase money. The probate deed to Meyer and his deed to Harke were dated the same day, and there is no evidence whatever that Harke paid an advanced price for the property. But it is contended that the deed to Kraut for $6,500, dated April 16, 1866, was for the Johle property, and consequently indicates a large profit over the $2,200 paid for it. But the Goodfellow deed, dated March 31, 1866, is for that property, showing that Meyer acquired his title thereto from the Goodfellow estate for $3,000, and not from the Johle estate. The deed to Kraut is for the Goodfellow tract, and also for the improvements thereon. It may be that there was a leasehold or some other interest in Johle, but, if so, no evidence to that effect has been adduced. True, Mrs. Meyer relinquished her dower in the deed of trust to Klein, and in the deeds to Harke and to Kraut, but there is no evidence of any agreement that she was to be compensated therefor by her husband. But suppose that Meyer did promise that he would give to her what profits he made out of his Johle purchases, it was a voluntary promise, and would not change the legal aspects of the case, even if any profits were shown to have been made. The deed must then rest for its validity upon other grounds, viz: that Meyer, at the time he made it, had ample property to meet the demands of existing creditors; that after $7,000 had been given to his wife, there was other property ample to satisfy his creditors' demands. In order to show what property he had, Mrs. Meyer and others state that at times he had large amounts of money about his person; that he was reported to be rich; that prior to 1867 he was doing a prosperous business, &c. Now testimony of that loose kind is of small value in the light of subsequent events. But various deeds of trust in his favor are offered to show that he was loaning money on real estate security.

Such evidence is very unsatisfactory. Thus it is said Xavier Meyer, his brother, had given to him a deed of trust to secure $1,000 loaned; but Xavier testifies that his brother sold the note to the German bank, and such might have happened with regard to the other real estate notes. Harke's deed was dated February 8, 1866, to secure three notes for $450, each one of which fell due before the deed in question, leaving in August, 1867, due $900.

Anthony's deed for $2,000 was due in June, 1867, and was released in September, 1867. The Oberselp deed of trust for $3,000 fell due in November, 1866, and released March, 1867. The Geisel deed for two notes of $1,400 each was for the benefit of Martin Meyer (saddler), evidently a different person. It is shown, indisputably, that when the deed for Mrs. Meyer's benefit was made, her husband owed, secured by a deed of trust on the property in

question, $2,180; that he owed Vogler $7,126 —making a total of $9,306.

Witnesses differ as to the real value of this property, but the testimony of one of respondents' witnesses is confirmed by the result.

| | | |
|---|---:|---|
| It brought, free from all incumbrances | $10,500 | 00 |
| Meyer owned two other lots, say... | 600 | 00 |
| If he still owned the St. Ferdinand block, all the evidence of its value which we have is what he gave for it | 32 | 00 |
| Now suppose he had in addition, as connected with his loans and personalty, even | 5,000 | 00 |
| Total | $16,132 | 00 |
| Deduct, then, the $7,000 to his wife.. | 7,000 | 00 |
| | $9,132 | 00 |

Thus he would have only $9,132.00 to meet his existing debts, amounting to $9,306.00.

A voluntary conveyance under such circumstances cannot be permitted to stand as against existing creditors. The next inquiry is as to the distribution of the fund. The prior deed of trust to Klein under which the sale was made must be first paid, for that was a valid subsisting lien. The contest for the balance takes this shape:

Vogler insists that as he was an existing creditor, and the deed for Mrs. Meyer was void only as to existing creditors, he must be paid before any of the subsequent creditors are let in.

Mrs. Meyer contends that if her deed is set aside, then after Vogler and Klein (the only existing creditors) are paid, she is entitled to recover her $5,000; for the deed for her benefit was void only as to those, and not as to subsequent creditors.

The subsequent creditors contend that, as the deed for Mrs. Meyer was void, it is as if never made—it is void in toto; and therefore Mrs. Meyer has no claim whatever on the fund until at least all creditors are paid; also, that as Vogler had no lien on the property, although he was an existing creditor, he is, as to this property, since Mrs. Meyer's claim thereto is out of the way, in no better position than the subsequent creditors. The argument is, that the existing and subsequent creditors are on the same footing, just as if no deed had been made for Mrs. Meyer's benefit.

In some English and American cases, it is said that when a voluntary conveyance is set aside, subsequent creditors are let in; but it is not said on what footing. In other cases, it is said, they are let in to share pro rata with the prior creditors. That ruling must be based on the ground that as the prior creditors had no lien on the property they are like all other creditors at large, and are entitled to no preference. It may not be entirely satisfactory to hold that when a deed is declared void only as to existing creditors, it shall be held void also as to all creditors, and more especially under the American system of recording deeds. A man in debt is supposed to act fraudulently towards

existing creditors when he gives away so much of his property as to embarrass them in the collection of their demands, for he must be just before he is generous; but subsequent creditors, it is supposed, knowing, at least constructively, that the conveyance is made, do not deal on the faith that the debtor still owns that property. On the other hand, the subsequent creditors did not know that there were prior creditors, and had a right to suppose that the residue of the debtor's property would furnish ample means for the payment of subsequent debts. Were the questions now to be decided for the first time, there might be some hesitancy in holding that a deed void as to existing creditors was to be considered void as to all creditors; for practically, such is the effect of letting in subsequent creditors, especially to share pro rata. The courts hold, with great uniformity, that the deed will not be set aside at the instance of subsequent creditors; yet they give to the latter the same benefit when the prior creditors do cause it to be set aside. Why such discrimination as to the right to attack the deed when there is none as to sharing in the result?

The well settled doctrines under the statute of fraudulent conveyances are:

1. That a voluntary deed is not fraudulent merely because there is some indebtedness existing, as was ruled in Reade v. Livingston, 3 Johns. Ch. 481, but that such a deed is void as to existing creditors only when made by a person in such embarrassed circumstances as not to leave ample margin in favor of existing creditors. The statute does not use the term voluntary conveyances, but fraudulent; and the good faith of the transfer is always open for review. It is now settled that when there are existing debts for the payment of which an ample margin is not left, the voluntary conveyance is made in bad faith towards existing creditors.

2. A voluntary conveyance, when there are no existing debts, may be void as to subsequent creditors, if it be shown, by facts and circumstances, that the deed was made with an actual intent to defraud subsequent creditors: Woodson v. Poole, 19 Mo. 340; Potter v. McDowell, 31 Mo. 62; Pratt v. Curtis [Case No. 11,375]; Salmon v. Bennett, 1 Conn. 525; Duhme v. Young, 3 Bush, 350; Holmes v. Penney, 3 Kay & J. 90; Sexton v. Wheaton, 8 Wheat. [21 U. S.] 250; Hindes v. Longworth, 11 Wheat. [24 U. S.] 211; 1 Am. Lead. Cas. 1; Mattingly v. Nye, 8 Wall. [75 U. S.] 370; 1 Story, Eq. Jur. § 355 et seq.

3. Where a post-nuptial settlement is made in consideration of relinquishment of dower, and of maintenance, especially where the wife's trustee joins in the covenants, that the wife will, in consideration of the settlement made, relinquish all claims to dower in her husband's estate, and will contract no debts on his account, etc., such a settlement is for a valuable consideration, and will be upheld in law, and cannot be assailed in equity by the husband's creditors, unless the amount so settled on the wife is unreasonable or excessive: Worrall v. Jacob, 3 Mer. 268; Stephens v. Olive, 2 Brown, Ch. 75; Clancy, Mar. Wom. 358; Compton v. Collinson, 2 Brown, Ch. 304; Hale v. Plummer, 6 Ind. 123; Harvey v. Alexander, 1 Rand. (Va.) 219; Wiley v. Gray, 36 Miss. 510; Bullard v. Briggs, 7 Pick. 536; Harrison v. Carroll, 11 Leigh, 484; Hargroves v. Meray, 2 Hill, Eq. 226; 35 Pa. St. 357; 2 Story, Eq. Jur. § 1427 et seq.; Madd. Ch. Prac. 275. 387. [Respondent's counsel criticise the bill in this point with some force, inasmuch as it does not charge in clear and distinct terms that the deed in question was made to defraud creditors, but simply charges that the notes, to secure which the deed was given, were without valuable consideration and fraudulent. If, however, the bill was not so distinct in its allegations as it should be, there was no special demurrer to it, and the answer and evidence present fully the real question at issue.] [3]

The deed of settlement as originally drawn and executed was, in legal contemplation, for a valuable consideration, and if the second agreement had not rescinded all provisions of the first, except the grant of the separate estate, that grant would remain valid. But, unfortunately for Mrs. Meyer the last agreement withdrew all of the consideration which was "valuable" as contradistinguished from "voluntary." After the last agreement there was no covenant to relinquish dower, etc.; all covenants on the part of herself and trustee were expressly rescinded. The grant thus existed as if made for love and affection merely. The legal inference from "condonation" (concerning which, see 2 Cox, Ch. 99; 2 Wend. 422; 3 Paige, 483; 9 Cal. 479; [Walker v. Walker] 9 Wall. [76 U. S.] 752; 1 Smale & G. 501; 3 Barn. & Adol. 743) does not arise in the case, because the intention of the parties is clearly expressed in writing, and is therefore not left open for inference. The case of Walker v. Walker, 9 Wall. [76 U. S.] 751, does not apply to this case.

4. When a deed is void as to existing creditors and is therefore set aside, all the creditors, prior and subsequent, share in the fund pro rata. Magawly's Trust, 5 De Gex & S. 1; Richardson v. Smallwood, Jac. 552–558; [Gilman v. N. & A. Co., Id. 460–464;] [4] Savage v. Murphy, 34 N. Y. 508; Iley v. Niswanger, Harp. Eq. 295; Robinson v. Stewart, 10 N. Y. (6 Seld.) 189; Thomson v. Dougherty, 12 Serg. & R. 448, 455, 458; 3 Dev. 12–14; 7 Ired. 32–38; 1 Am. Lead. Cas. 45; Norton v. Norton, 5 Cush. 529; 4 Dev. 197–204; 3 Johns. Ch. 481–499; 2 Ves. 10; 3 Drew. 419–424.

---

[3] [From 7 N. B. R. 97.]
[4] [From 7 N. B. R. 97.]

It has been suggested that under the peculiar facts and circumstances of this case, Martin Meyer has a homestead right to $1,000 out of the surplus. The doctrine held in Clark v. Potter, 13 Gray, 21, and recognized in White v. Rice, 5 Allen, 73, favors the suggestion of counsel. Recently, in the case of Cox v. Wilder [Case No. 3,308], the circuit judge held that where a deed executed by husband and wife was set aside as fraudulent, it being designed to defraud creditors, neither the homestead nor dower right was lost, but the husband's right to a homestead and the wife's right to dower remain just as if the fraudulent or void deed had never been made. Taking the doctrine in the two Massachusetts cases and the views of the circuit judge, and applying them to this case, it seems that this result follows, viz: That Meyer, so far as the Klein deed is concerned, retained a homestead right to the surplus as against his assignee in bankruptcy; but as the deed of settlement is valid as between the husband and wife, this homestead right passed to her.

Hence the decree will be that the deed of trust to Kehr be declared null and void, as to Meyer's creditors; that Kehr be perpetually enjoined from delivering a deed under the sale made by him as trustee, and that out of the funds derived from the sale of the property in question, there be paid, first, the expenses of said sale; second, to the creditor secured by the deed to Klein, the amount of the debt due to him; third, to Mrs. Meyer $1,000; fourth, the costs of this suit; and that the residue of the fund be held by the assignee, to be divided pro rata among all the creditors of the bankrupt's estate under the orders of the district court in bankruptcy.

On the appeal from the foregoing decree the case was argued by:

N. Myers, for Mrs. Meyer.
John Ford Smith, for assignee.
Slayback & Haussler, for Vogler.

DILLON, Circuit Judge. In the summer and fall of 1867, when the articles of separation and reconciliation were made, Meyer, the bankrupt, was engaged in business. The articles of separation and of reconciliation were only a few weeks apart, and there does not seem to have been in the meantime any change in the property or pecuniary situation of Mr. Meyer. He confessedly owed at that time to Mr. Klein, $2,180, secured by deed of trust on his homestead property; and to Vogler the sum of $7,126, not secured, and which together amounted to $9,306. His assets were uncertain beyond his homestead property, worth about $12,000, and his interest in two other lots, worth $300. The evidence as to his personalty and credits does not satisfy me that they exceeded the estimate of the district court, which was $5,000. The debts to Klein and to Vogler have never been paid; and after the allowance of $1,000 for the homestead right, the estate of the bankrupt, consisting chiefly of the homestead property, will not much more than equal the amount due on debts which antedated, in their creation, this settlement upon Mrs. Meyer.

And the main question now made is whether Mrs. Meyer has a right, as against creditors, to have paid to her out of the proceeds of the sale of the homestead property the amount of the notes which were given for her benefit by her husband, and secured by a deed of trust on the homestead property.

She claims that this is a valid lien upon the property in her favor, and that it should be recognized and enforced as such.

I have grave doubts whether a man in business, with assets not exceeding, if, indeed, they equal, $17,000 or $18,000, and who is shown to be in debt over $9,000, can, as against existing creditors, even if there be no actual intention to defraud them, make a settlement of $7,000 upon his wife, which will stand in a contest by her with creditors who were such at the time, and where the alternative is that if the settlement or provision in favor of the wife is sustained the creditors must suffer. But I am of opinion, with the district court, that the effect of the reconciliation and of the articles then executed, was to make the notes and deed of trust in favor of the wife substantially a voluntary settlement or conveyance, and not one for value. If this is so, then it is clear that it cannot be upheld to the prejudice of creditors then existing. Conscious of the inability to sustain the transaction in favor of the wife, unless the agreement to pay her the $5,000 can be made to rest upon a valuable consideration, her counsel has labored with great ingenuity to show that such a consideration existed.

But what value did she give that can uphold the promise in her favor as against the husband's creditors? The promise, by the husband to pay her $5,000, was for her maintenance apart from him and in consideration of her release of dower, &c. All the promises were executory. She returns, and the parties rescind every portion of the articles of separation except that by which he agrees to pay her in the future $5,000—and it is this sum that she now seeks to be allowed, as against creditors of the husband existing at the time. I fail to see any value that a court of equity, which looks at substance, can regard in a controversy between the wife and creditors of her husband. It is argued that the promise of the husband was valid when made, and if so that it cannot be rendered bad by matter afterwards arising. But when the parties in a few weeks rescinded the whole agreement, except in the particular named, when all that the wife had promised as a consideration for the husband's promise had been cancelled, how can equity say that here is a consideration to the husband which as against his creditors will sustain a transaction otherwise fraudulent in contemplation of law? This question is so satisfactorily presented in the opinion of the

district judge, with whose views respecting the case in its various aspects I concur, that I consider it to be quite unnecessary to dwell longer upon it.

The husband fled the country and abandoned his wife, leaving her, however, in the actual possession of the homestead property. The assignee concedes that if the husband claimed it, he would be entitled to the $1,000 homestead exemption, but insists that the wife cannot claim it, or that it cannot be allowed to her. It is evident, both from the statute and its policy, that its provisions are intended for the benefit of the family, and, under the circumstances, I find no difficulty in securing this provision to the wife. 'To that extent the court could, if necessary, give efficacy to the deed of trust in her favor; if it be necessary that the exemption should be applied for in the name of the husband. the court would even allow her to apply in his name, so as to prevent the amount from going into the hands of the assignee, who has no claim or equity whatever to it. The act of congress of June 8th, 1872 (17 Stat. 334), has no application to this case, as it was enacted after the adjudication of bankruptcy. The decree of the district court is affirmed. Affirmed.

NOTE. An appeal to the supreme court of the United States was prayed by Mrs. Meyer, and allowed. [The decree of the circuit court was affirmed. 20 Wall. (87 U. S.) 31.] As to the homestead exemption, see Cox v. Wilder [Case No. 3,308], and note.

SMITH (KELLY v.). See Case No. 7,675.

SMITH (KING v.). See Case No. 7,806.

SMITH (LAMBERT v.). See Cases Nos. 8,-027 and 8,028.

SMITH (LEAGUE v.). See Case No. 8,159.

SMITH (LEWIS v.). See Case No. 8,332.