### GARDNER v. JOHNSON.

No. 13009.

United States Court of Appeals
Ninth Circuit.

March 22, 1952.

Thomas S. Tobin, Los Angeles, Cal., for appellant.

Joseph Mayer, Beverly Hills, Cal., for appellee.

Before STEPHENS, BONE and POPE, Circuit Judges.

POPE, Circuit Judge.

This appeal involves the question of whether the bankrupt is entitled to a homestead exemption in a lot located in the City of Los Angeles. The referee, in a summary proceeding brought by the trustee, made an order adjudging that the bankrupt's claim of a homestead exemption was invalid, and that the trustee, as such, was entitled to the lot. Upon petition for review, the district court reversed the referee's order and held the claim of homestead exemption valid. 97 F.Supp. 779.

The bankrupt filed her voluntary petition in bankruptcy in the court below on April 24, 1947. Her petition scheduled real estate: "none"; under schedule B5, "property claimed to be exempt under federal and state laws", she listed: "none". After his appointment, the trustee instituted a civil action in the District Court for the Southern District of California seeking to set aside as fraudulent transfers of the lot which the bankrupt had made to her daughter and the daughter's children in the year 1944.[1] Defendants in the action were the bankrupt, her daughter, and the daughter's children. An answer was filed on behalf of defendants in that action, including the bankrupt, but the answer contained no mention of any claim of homestead in the property.

At the trial of that action, in which the bankrupt as a defendant tried her own case, no mention or suggestion was made of the existence of a homestead in respect to the property. The court made findings to the effect that the property in question had been transferred by the bankrupt voluntarily and for the purpose of hindering, delaying and defrauding her creditors. The conclusions were that the purported transfer should be cancelled and set aside and the record title vest in the plaintiff trustee to be administered in the bankrupt estate. Judgment was entered accordingly on February 10, 1949. The bankrupt took an appeal to this court on behalf of herself and the other defendants and the judgment was affirmed here. Johnson v. Gardner, 9 Cir., 179 F.2d 114, certiorari denied 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353.

The trustee then discovered that on November 18, 1944, before the transfer to her daughter and children, the bankrupt had recorded a declaration of homestead on the property. As the trustee was in possession of the property he then instituted the summary proceedings mentioned above and which resulted in the order reversed by the court below.

The trial court held that when the bankrupt recorded her claim of homestead in November, 1944, she acquired a valid homestead exemption under the applicable California statutes; that since the property in question was exempt under the state law, title to it did not pass to the trustee in bankruptcy under the Bankruptcy Act; that notwithstanding the California Civil Code § 1243 provides that a homestead may be abandoned by "a grant thereof", yet the deeds made by the bankrupt did not have any such effect here because that transfer was set aside and held for nought in the action which the trustee had brought. The court held that the homestead property could not be the subject of a fraudulent conveyance since the creditors had no claim thereto; further, that the homestead in question was a creature of California law, and cited California decisions which were assumed to hold that a homestead cannot be lost or abandoned by a conveyance made for the purpose of avoiding credi-

1. December 2, 1944, the bankrupt executed and recorded a deed of gift to her daughter, Gladys Venes, "and her children". December 14, 1944, she executed and delivered a grant deed of the same property to the same daughter.

tors.[2] For this reason, the court thought, the bankrupt's rights were not affected by the amendment to section 6 of the Bankruptcy Act[3] to the effect that exemptions shall not be allowed out of property which a bankrupt has transferred or concealed and which is recovered or the transfer of which is avoided for the benefit of the estate.

The exemption here in question is defined by California law. The Bankruptcy Act declares the policy of Congress to give effect to state exemption laws. But once bankruptcy has intervened, the time, manner and conditions under which such exemptions may be claimed as against the trustee are matters of federal law, and are determined by the Bankruptcy Act.

■ In the case of In re Gerber, 9 Cir., 186 F. 693, this court, dealing with a claim of homestead under the Washington statute, held that the bankrupt there had lost his right to claim the exemption by his failure to comply with the Bankruptcy Act and the general orders promulgated thereunder. This court called attention to the fact that the forms prescribed by the Supreme Court pursuant to the Act required the bankrupt to claim his exemptions in a specific manner, and that the Act provided for a precise mode of setting apart and awarding such claims of exemption. It was held that the bankrupt had lost and abandoned any right to a homestead exemption by a failure to schedule and list the same in the manner required by the general orders in bankruptcy. The court said, 186 F. at page 700: "The rules and forms so prescribed by the Supreme Court under and by virtue of the bankruptcy act have the force and effect of law, and it therefore seems to us to result necessarily that the bankrupt here, even though it should be conceded that he was not limited to the species of property specified in the statute

of Washington as hereinbefore indicated, lost any right he may have had to the exemptions claimed, by his failure to make the claim in the manner and within the time legally prescribed therefor. And it has been so decided." Under the authority of that decision we are compelled to hold that the bankrupt here waived and abandoned any claim of homestead by failure to schedule the same.

That the statutory requirement of scheduling and claiming such exemptions is a matter of substantial importance, is illustrated by what happened in this case, where the administration of the bankrupt estate, including the prosecution of the action to set aside the fraudulent conveyance, went on from the date of the voluntary petition in April, 1947, until the summary proceeding here was instituted in November, 1950, without any suggestion from the bankrupt that there was a homestead exemption to be taken into consideration.[4]

■ Again we think the court below was in error in its failure to hold that when the bankrupt conveyed the property in question to her daughter, she abandoned the homestead. The court held that the deed was no more effective than a defectively executed deed would have been, and said: "In the present case, the bankrupt's attempts to deed the property to her daughter were declared fraudulent, both under the state law and the Bankruptcy Act, at the suit of the Trustee. The attempted conveyances having been set aside, the property is in the same status it had before the deed was executed,—i. e., it is subject to the burden of the homestead." [97 F. Supp. 782.]

This conclusion of the court below appears to us to have the effect of making the bankrupt the beneficiary of the trustee's suit to set aside her fraudulent conveyance. That suit was brought to vindicate and up-

---

2. The cases thus cited were Palen v. Palen, 28 Cal.App.2d 602, 83 P.2d 36; Arighi v. Rule & Sons, 41 Cal.App.2d 852, 107 P.2d 970; and Vieth v. Klett, 88 Cal. App.2d 23, 198 P.2d 314. In these cases there was either a failure to convey the entire estate, or the grantee took title to hold in trust for the grantor.

3. Title 11, U.S.C.A. § 24, as amended June 22, 1938, C. 575, § 1, 52 Stat. 847.

4. No effort was made by this bankrupt to amend her schedules. Any effort to do so after the judgment avoiding the transfers would be affected by the provisions of the amendment to § 6 discussed infra.

720

hold the rights of the trustee and of the creditors represented by him. So far as the bankrupt was concerned, she should be in no position, as between herself and her daughter grantee, to say that no transfer occurred. We think that such a deed as here involved, although void as to creditors, is yet valid as between the fraudulent grantor and the grantee. Thus, in Allan v. Moline Plow Co., 8 Cir., 14 F.2d 912, 915, the court said: "In a suit to set aside a fraudulent conveyance, the grantor is not an indispensable party defendant where he has retained no interest, either legal or equitable, in the property conveyed. The reasons for the rule are these: The property in such a case has irrevocably passed from the grantor's control; he cannot be prejudiced by a decree which subjects such property to the payment of his debts; and he cannot enjoy any of the fruits of a successful prosecution of the suit to set aside the fraudulent conveyance, for, after the creditor's demand is satisfied, the remainder of the fund goes to the fraudulent grantee." Such is the rule in California. Abbey v. Zimmerman, 12 Cal.App.2d 311, 318, 55 P.2d 903, 907.[5] We think the conveyance by the bankrupt was an abandonment of any right of homestead.

Again, when § 6 of the Bankruptcy Act was amended in 1938, the purpose of Congress, as disclosed by the legislative history, was to settle a long standing controversy among the federal courts as to the right of a bankrupt to claim exemptions out of property which had been fraudulently conveyed by transfers which were avoided at the suit of the trustee for the benefit of the bankrupt estate. The subject of the section is the allowance to the bankrupt of exemptions prescribed by state and federal laws. The proviso added by the amendment recites: "That no such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this title for the

benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess."

We perceive no reason why the quoted language should not have application here. The opinion of the court below seems to suggest that this section is not applicable for the reason that the bankrupt was granted her homestead exemption by California law; that she had it from that source for several years prior to her bankruptcy; and that the Bankruptcy Act and the court of bankruptcy had nothing to do with allowing it to her, since she was not required to take any steps or do anything to have it set aside or allowed to her by the trustee or any officer of the bankruptcy court.

■ We think that the scheme of administration of the Bankruptcy Act is such that affirmative steps must be taken, both by the bankrupt and by those administering the bankruptcy estate, before exempt property can be allowed to the bankrupt. Thus in Chicago, B. & Q. R. R. v. Hall, 229 U.S. 511, 515, 33 S.Ct. 885, 886, 57 L.Ed. 1306, the court said: "It is true that title to exempt property does not vest in the trustee, and cannot be administered by him for the benefit of the creditors. But it can 'pass to the trustee as a part of the estate of the bankrupt,' for the purposes named elsewhere in the statute, included in which is the duty to segregate, identify, and appraise what is claimed to be exempt. He must make a report 'of the articles set off to the bankrupt, with the estimated value of each article,' and creditors have twenty days in which to except to the trustee's report. Sec. 47 [sub. a] (11) and general orders in bankruptcy 17. In other words, the property is not automatically exempted, but must 'pass to the trustee as a part of the estate',—not to be administered for the benefit of creditors, but to enable him to

5. "A grant made in fraud of creditors is valid between the parties and to all the world except as to the creditors of the grantor. * * * The grantee takes whatever interest the grantor had qualified only by the interest of the creditors and after their claims are satisfied is usually entitled to any surplus remaining. * * *"

perform the duties incident to setting apart to the bankrupt what, after a hearing, may be found to be exempt." [6]

In Branchfield v. McCulley, Or.1951, 231 P.2d 771, 783, the court had occasion to pass upon the question of the effect of amended section 6 upon a claim of homestead exemption under Oregon law. The circumstances were very similar to those presented by this appeal. That court held that the proviso of § 6 quoted above, was effective to prevent the allowance to the bankrupt of the claim of homestead exemption there asserted.[7] We agree with that conclusion.[8]

The order of the lower court is reversed with directions to affirm the order of the referee.

6. Cf. Bankruptcy Act, § 47, sub. a (6), as amended in 1938; 11 U.S.C.A. § 75, sub. a (6).

7. A reference to the legislative history of the amendment of § 6, above referred to, will be found In re Grisanti, D.C.Ky., 58 F.Supp. 646, 647.

8. If we were to agree with the district court's view on this matter, we would be confronted with the question whether, after the judgment in the former suit by the trustee, the bankrupt was in a position to litigate the question she now presents. Although the bankrupt was not an indispensable party to that suit, she nevertheless was properly made a party and the record shows she actively managed the defense therein on behalf of herself and the other defendants. If, as the trial court has assumed, title to this property did not pass to the trustee because it was exempted under the California law, it would seem there would be a defense available against the trustee's suit. Had the bankrupt, defendant therein, on behalf of herself and the other defendants for whom she was acting, disclosed that the action related to exempt property, the court could hardly have entered a judgment determining that the lot belonged to the trustee. In the former action, and upon this summary proceeding, the issue is the same, namely, the trustee's title to the property. Hence the question which we are not now required to answer, is whether the former judgment would not operate as an estoppel, not only as to the very matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action, including the question of homestead exemption.