**In the Matter of Josephine MYERS, a/k/a R. J. Myers Cravens, Bankrupt.**

**Bankruptcy No. 36343.**

United States District Court,
W. D. Missouri, W. D.

Oct. 18, 1973.

Dennis G. Muller, Charles R. Nuzum, Kansas City, Mo., for bankrupt.

I. I. Ozar, Kansas City, Mo., for trustee.

AMENDED[1] ORDER DENYING BANKRUPT'S PETITION FOR REVIEW AND AFFIRMING ORDER OF REFEREE IN BANKRUPTCY OF JUNE 20, 1973, DISALLOWING HOMESTEAD EXEMPTION

WILLIAM H. BECKER, Chief Judge.

This cause comes before this Court on the bankrupt's timely petition for review, filed herein on June 29, 1973, pursuant to Section 39c of the Bankruptcy Act. In her petition herein, bankrupt seeks to review and attain reversal of the order of the Referee in Bankruptcy entered June 20, 1973, wherein bankrupt's homestead exemption claim was disallowed.

On August 3, 1973, pursuant to Local Rule 29, the parties herein filed the General Order 47 Stipulation therein agreeing and stating that no additional evidence is to be offered before this Court by any party and that this petition for review is submitted to this Court solely upon the evidence adduced before the Referees.[1a]

It is not necessary or desirable to expand the record by a detailed recitation of all that has occurred in this cause. However, because of the protracted nature[2] and possible complexity of this case, a chronological summary of the record is set forth in respect to matters leading up to the present petition for review.

The bankrupt, Josephine Myers, also known as R. J. Myers Cravens, was adjudged bankrupt upon her voluntary petition filed herein on February 5, 1968, and amended on May 2, 1968.

The Trustee filed herein on August 23, 1968, his petition as amended May 2, 1969, to take possession and control of certain real estate located at 631 East 66th Street Terrace, Kansas City, Missouri, owned by the bankrupt alone and subsequently transferred to her spouse and herself as tenants by the entirety by deed dated January 26, 1968, ten days

1. This Court entered its order in this cause on September 28, 1973. The findings and conclusions on which that order was based had not been formally typed and they were presented in a supplemental memorandum and order entered on October 3, 1973. The above orders were entered in draft form to avoid any possible problems which might result from the application of the new Bankruptcy Rules adopted April 24, 1973, and effective October 1, 1973.

1a. This cause was originally referred to Referee Jack C. Jones on February 5, 1968. Due to the complexities of the case and for other reasons, this cause was transferred to Chief Referee Frank P. Barker, Jr., on August 11, 1972, by the same, pursuant to the Order of the Court en banc of September 8, 1971, which vested Chief Referee Barker with powers of reassignment of cases. On January 14, 1973, for good cause appearing, this cause was reassigned to Referee Jones for all further proceedings including consideration or reconsideration of the claimed homestead exemption.

2. As of the entering of this order this bankruptcy case will have consumed over five years and eight months of judicial and attorney time.

prior to the filing of her voluntary petition in bankruptcy.

On May 12, 1969, bankrupt filed a motion to dismiss the Trustee's amended petition to take possession and control of said real estate. After an evidentiary hearing on the motion, the Trustee and the bankrupt filed briefs. Thereafter, on January 22, 1970, the Referee made findings of fact and conclusions of law and denied the bankrupt's motion to dismiss. On March 9, 1970, the Referee entered an order overruling the bankrupt's motion for reconsideration of the order entered on January 22, 1970.

On May 25, 1970, another evidentiary hearing was held in respect to the Trustee's action under Section 67d of the Bankruptcy Act in taking possession and control of the real estate in question. Both the bankrupt and the Trustee filed suggestions in support of their respective positions. On December 9, 1970, the Referee entered an order setting forth his findings of fact and conclusions of law, therein finding: (1) that the real estate was in the constructive possession of the Court; (2) that the bankrupt's attempted transfer on January 26, 1968, was not made for fair consideration and was made at a time when the bankrupt was insolvent; (3) that the bankrupt's defense to the action of the Trustee was made in bad faith without any legal justification; and (4) that the transfer in question was made with actual intent to defraud creditors.

On April 2, 1971, the bankrupt filed a motion to dismiss her voluntary petition in bankruptcy, to which the Trustee filed objections on April 20, 1971. After an evidentiary hearing an order was entered on April 27, 1971, denying the motion to dismiss her voluntary petition.

On May 7, 1971, bankrupt filed a motion to set aside and reconsider the order of May 7, 1971, denying her motion to dismiss. This motion was also denied by an order entered on June 22, 1971. On July 2, 1971, bankrupt filed a petition for review of the order of June 22, 1971.

On December 10, 1971, the order of the Referee denying the bankrupt's motion to dismiss her voluntary petition was affirmed. Prior thereto, by order of December 9, 1970, the Referee granted possession of the bankrupt's real estate located at 631 East 66th Street Terrace, Kansas City, Missouri, to the Trustee on a finding that the transfer of said realty by the bankrupt to her spouse and herself as tenants by the entirety by deed dated January 26, 1968, ten days prior to the filing of the petition herein for bankrupty, constituted a fraudulent conveyance by the bankrupt in violation of the provisions of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act.[3]

After notice and hearing, the Referee entered an order on January 11, 1972, to sell the real estate in question which was the residence of the bankrupt. This order further directed the bankrupt to give possession of the premises to the Trustee and to vacate said premises within fifteen (15) days.

On February 7, 1972, the bankrupt petitioned for reconsideration of the order of sale on the grounds that it did not provide for her homestead exemption of three thousand ($3,000.00) dollars as allowed by Missouri law pursuant to Section 513.475, V.A.M.S.[4]

---

3. Sections 67d(2)(a) and (2)(d) pertinently provide as follows: "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or . . . (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors."

4. That section pertinently provides as follows:

"The homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances, and the land

On March 28, 1972, upon the application of the Trustee and with consent of the bankrupt, an erroneous order was entered authorizing the bankrupt to quitclaim her interest in the real estate to the Trustee in conjunction with the authorization by the Trustee to pay the bankrupt her three thousand ($3,000.00) dollar exemption " . . . upon the day she *voluntarily* moves totally from the premises . . . . " (Emphasis added.) In this same order, the Court further authorized the Trustee to borrow four thousand ($4,000.00) dollars to pay the bankrupt her homestead exemption—the additional one thousand ($1,000.00) dollars being provided for necessary repair work. With respect to this order of March 28, 1972, it should be noted that the merits of bankrupt's right to the homestead exemption were not decided.[5]

On March 29, 1972, at the continued hearing on amending the order of sale, the bankrupt was verbally ordered in open court by the Referee to vacate said premises by May 1, 1972. Thereafter, on April 17, 1972, the Referee directed the United States Marshal to remove the bankrupt physically from the premises on May 1, 1972. This order was then orally revoked by the Referee on May 1, 1972.

On May 4, 1972, the bankrupt was directed to show cause why an order should not be made to dispossess and evict her immediately from the said premises. Upon notice, a hearing was held on the order to show cause on May 12, 1972. At the conclusion of the hearing, counsel for the bankrupt and for the trustee were granted leave to file suggestions and reply suggestions. No suggestions were filed by the bankrupt. On May 18, 1972, the Referee directed the United States Marshal to remove the bankrupt physically from the premises on June 1, 1972.

On May 30, 1972, the bankrupt filed a motion to reconsider the order of May 18, 1972, including therewith suggestions in support thereof. The next day, the Referee overruled this last motion to reconsider and again erroneously directed the Trustee to pay the bankrupt her homestead allowance, said payment to be " . . . *concurrent* with Trustee's actual possession of the property." (Emphasis added.) The Referee further directed the United States Marshal to delay any actual physical eviction until further order of the Court.

On August 11, 1972, this cause was reassigned to Chief Referee Frank P. Barker, Jr., for all further administration under the Bankruptcy Act.[6] On

---

used in connection therewith, not exceeding the amount and value herein limited, which is or shall be used by such housekeeper or head of a family as such homestead, shall, together with the rents, issues and products thereof, be exempt from attachment and execution, except as herein provided; such homestead in the country shall not include more than one hundred and sixty acres of land, or exceed the total value of fifteen hundred dollars; and in cities having a population of forty thousand or more, such homestead shall not include more than eighteen square rods of ground, or exceed the total value of three thousand dollars; and in cities having a population of ten thousand and less than forty thousand, such homestead shall not include more than thirty square rods of ground, or exceed the total value of fifteen hundred dollars; and in cities and incorporated towns and villages having a population less than ten thousand, such

homestead shall not include more than five acres of ground, or exceed the total value of fifteen hundred dollars."

5. In that order, it is stated:
"The application of I. I. Ozar, Trustee of the above bankruptcy estate, for authority to accept a deed granting title of real estate from the bankrupt to Trustee, for the benefit of the creditors of said estate; for Trustee to make necessary expenditures for the repair of the house situated on said real estate and to borrow money for the purpose of paying bankrupt her homestead allowance and to make said repairs and to execute a lien and deed of trust against said real estate, having been filed, the Court having knowledge of the facts of this matter *finds that these actions will be in the best interests of all concerned.* . . . ." (Emphasis added.)

6. See Footnote 1a, *supra.*

this same day, the Referee issued an order to show cause " . . . in writing on or before August 18, 1972 why an Order should not be entered directing the Trustee with the assistance of the United States Marshal to take possession of said premises and . . . [p]hysically remove if necessary the bankrupt. . . ." The order further directed that, in the event the bankrupt failed to show good cause and failed to voluntarily remove herself from said premises, that said bankrupt must then show cause before September 7, 1972, " . . . why a Certificate of Contempt under § 41 of the Bankruptcy Act should not issue forthwith." Bankrupt answered the Court's show cause order on August 17, 1972.

On August 18, 1972, the Referee entered an order of eviction, finding bankrupt's responses to the Court's show cause order of August 14, 1972, to be without merit.[7] This order was then stayed on September 6, 1972, for the reason that the "Trustee, herein, ha[s] reported to the Court Josephine Myers, bankrupt was in good faith attempting to comply with the Order of this Court dated August 18, 1972. . . ." On this same day, bankrupt filed an answer to the Court's show cause order of August 18, 1972, therein setting forth her reasons why her homestead exemption should not be barred under Section 6 of the Bankruptcy Act. The Trustee filed suggestions in opposition thereto on October 13, 1972.

On October 17, 1972, the Referee issued an order confirming the sale of the real estate in question as reported in the Trustee's report of sale filed herein on October 5, 1972.

On November 21, 1972, the Referee entered an order setting aside and declaring to be null and void the fraudulent conveyance of January 26, 1968. This conveyance had been found to be in violation of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act by order of this Court on December 9, 1970.

On March 19, 1973, bankrupt filed a petition to reconsider this Court's order approving the Trustee's report on exemptions ". . . for the reason that said order would appear to include a determination relative to the allowance of the bankrupt's homestead interest." An evidentiary hearing on the above petition for reconsideration, although not requested, was set for May 22, 1973, by order of May 4, 1973. Bankrupt then filed a request for such a hearing on May 9, 1973.

On June 14, 1973, this cause was reassigned to Referee Jack C. Jones ". . . for all further proceedings including consideration or reconsideration of the claimed homestead exemption."[8]

On June 20, 1973, the Referee properly entered an order disallowing the bankrupt's claimed homestead exemption and approving the Trustee's report of exempt property which did not set off a claimed homestead exemption to the bankrupt. The Court further ordered that the ". . . orders of March 28, 1972, and May 31, 1972, are hereby and

---

7. In respect to the question of the homestead allowance, the Referee noted as follows:

"Previous Orders of Referee Jones indicate that a homestead allowance of Three Thousand ($3,000.00) Dollars as provided under Missouri law would be paid to the bankrupt out of the proceeds of the sale of the property inasmuch as there are no cash assets in this estate. It also appears however that no report of exempt property has been filed by the trustee and approved by the Court.

"While the direct reply to the bankrupt's first response is that there is no require-

ment under the Bankruptcy Act that the Trustee in a fact situation such as this must strictly adhere to what the bankrupt claims is Missouri law, more important is § 6 of the Bankruptcy Act (11 U.S.C. § 24) relating to *Exemption of Bankrupts*, and more specifically the proviso clause which prohibits an allowance to be made out of the property which a bankrupt transferred and which is avoided under the Act. Any award of a homestead allowance yet remains to be finally determined." (Emphasis in original.)

8. See Footnote 1a, *supra*.

herewith set aside and held for naught." In respect to this latter provision, the following findings, as stated in the order, are noteworthy:

"The referee's orders of March 28, 1972, and May 31, 1972, were made without any evidentiary hearing on the material facts nor any consideration of the applicable law as applied to the facts on the right of bankrupt to a homestead allowance. The real estate was deteriorating and both the referee and the trustee were interested in the sale of the assets at the best possible price and needed possession of the premises after a four year delay."

In respect to bankrupt's claim to a homestead exemption under Section 513.-475, V.A.M.S.,[9] the Referee found that "[t]he proviso clause of § 6 specifically provides that the bankrupt cannot claim an exemption out of property recovered by the trustee. As noted in Gardner v. Johnson, [195 F.2d 717 (10th Cir. 1952)] supra, the time, manner, and conditions under which such exemptions may be claimed as against the Trustee are matters of Federal law, and are determined by the Bankruptcy Act."

In her petition for review herein, bankrupt contends that the Referee erred in disallowing her claimed homestead exemption under Section 6 of the Bankruptcy Act as an exemption claimed in property the transfer of which has been avoided or set aside for the benefit of the bankruptcy estate. In regard to this question, bankrupt asserts that federal law is not applicable in that "[a] bankrupt's right to exemption is governed by (1) the law of his domicile (2) in force at the time of the filing of his petition (3) as construed by the State court."

In her petition for review the bankrupt further contends that this Court is bound by the Referee's erroneous order of May 31, 1972, which she asserts effectively decided that she was entitled to her claimed homestead exemption.

Bankrupt's latter contention in respect to the Referee's order of May 31, 1972, is without merit. This interlocutory order was made without an evidentiary hearing on the material facts and without consideration of the proviso of Section 6 and the applicable law in respect thereto. The merits of the question whether bankrupt was entitled to her homestead exemption were never reached and the order was conditioned on the bankrupt's turning over immediate possession of the real estate to the Trustee in order to finally close the estate. The bankrupt refused to comply with the condition and steadfastly refused to surrender possession until sometime in September, 1972, when her eviction by the United States Marshal was imminent.

In the order of June 20, 1973, the Referee stated as follows:

"I do not feel bound by my prior orders [March 28, 1972, and May 31, 1972] as the rights of third parties have not intervened and the facts and circumstances dictate these orders should be reconsidered. This court has the power to reconsider its orders and my orders are hereby reconsidered and revoked insofar as they pertain to a homestead allowance of $3,000.00. In re Pottasch Bros. Co., Inc., 79 F.2d 613 (2 Cir. 1953); 2 Rem. § 33, 2 Collier § 3809(3)."

It is clearly established that a referee, once having entered an order, in the absence of exceptional circumstances not present in this case, has the power to reconsider and amend or revoke it. In re Pottasch Bros. Co., Inc., 79 F.2d 613 (2nd Cir. 1937), 101 A.L.R. 1182; La Barbera v. Grubard, 112 F.2d 738 (2nd Cir. 1970); In re Clark, 257 F.Supp. 761 (E.D.Va.1966); 2 Collier, Bankruptcy ¶38.09[3], 1434–1435 (14th ed. 1972). Thus, the Referee had the power to revoke and vacate the interlocutory orders of March 28, 1972 and May 31, 1972. Further, the bankrupt has presented no additional facts or legal contentions

9. See Footnote 4, *supra*.

which would warrant this Court in finding the action of the Referee to be clearly erroneous and an abuse of this exercise of power. Equitable Life Assurance Society v. Deutschle, 132 F.2d 525 (8th Cir. 1942); Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); Bankruptcy General Order 47; 2 Collier, Bankruptcy ¶39.28 (14th ed. 1972).

Turning to the merits of the Bankrupt's claim to a homestead exemption under Section 513.475, V.A.M.S.[10] and her contentions in support thereof, it is necessary to note Section 6 of the Bankruptcy Act which provides as follows:

"This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State; *Provided, however, That no such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this act* for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess." (Emphasis added.)

The Trustee and the Referee in his order of June 20, 1973, invoke the proviso (underscored language in particular) clause of Section 6 contending that this clause effectively denies bankrupt her claimed homestead exemption in light of bankrupt's transfer of certain real estate located at 631 East 66th Street Terrace, Kansas City, Missouri, titled in her name alone, to her spouse and herself as tenants by the entirety by deed dated January 26, 1968, ten days prior to the filing of her voluntary petition in bankruptcy. On November 21, 1972, the Referee entered an order setting aside and declaring to be null and void the fraudulent conveyance of January 26, 1968, which was held to be in violation of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act by order of December 9, 1970.

The issues raised in the respective briefs in support and in opposition to bankrupt's claimed homestead exemption involve the proviso of Section 6 which was added to that Section of the Bankruptcy Act in 1938 by an Act hereinafter referred to as the Chandler Act.[11]

Prior to the Chandler Act of 1938, the decisions were in sharp conflict whether the bankrupt might claim his exemptions from property which had been transferred or concealed but recovered by the trustee. 1A Collier, Bankruptcy ¶6.11[4], 855 (14th ed. 1972); 161 A.L.R. 1009, 1018–1019. With respect to property fraudulently transferred, many courts held that the bankrupt maintained the right to exemptions. This view was based generally on applicable state law. See, e. g., In re Park, 102 F. 602 (W.D.Ark.1900); In re Schuller, 108 F. 591 (E.D.Wis.1901); Cox v. Wilder, 2 Dill 45, Fed.Cas. No. 3–308 (Mo.1872); Smith v. Kehr, 2 Dill 50, Fed.Cas. No. 13–071 (Mo.1872), affirmed 20 Wall. 31, 22 L.Ed. 313 (1874). A similar rule was adopted with respect to property transferred as a preference, In re Soper, 173 F. 116 (D.C.Neb.1909); In re Falconer, 110 F. 111 (8th Cir. 1901); Arbogast v. Gottfried, 58 F.2d 156 (6th Cir. 1932), and to property which had been fraudulently concealed. See, e. g., Matter of Ziff, 225 F. 323 (E.D.Ala.1915); In re Park, *supra*.

To the contrary, other courts held that under such fraudulent circumstances, the bankrupt had no right to any exemp-

10. See Footnote 4, *supra.*

11. H.R. 12,889, 74th Cong. 2d Sess. (1936). For further analysis of this Act, see 1A Collier, Bankruptcy ¶ 6.11[3] and [4] (14th ed. 1972) and 161 A.L.R. 1009, 1025–1026 and cases cited therein.

tions in that such a right was forfeited by conveying property in fraud of creditors. In re Yost, 117 F. 792 (M.D.Pa. 1902); In re Denson, 195 F. 857 (N.D. Ala.1912); In re White, 109 F. 635 (W. D.Mo.1901). This latter view was also supported by decisions with respect to property preferentially transferred but recovered. In re Coddington, 126 F. 891 (M.D.Pa.1904); In re Wishnefsky, 181 F. 896 (D.C.N.J.1910); In re Evans, 116 F. 909 (E.D.N.C.1902). Other cases denied exceptions in respect to property fraudulently concealed but recovered. In re Sussman, 183 F. 331 (M.D.Pa.1910); Matter of Van Winkle, 14 Am.B.R. (N.S.) 713 (Ref., Cal.).

After the passage of the Chandler Act in 1938, the conflict was apparently resolved through the addition of the proviso to Section 6 of the Bankruptcy Act, quoted above. The basis for this proviso is that " . . . a bankrupt should not profit at the expense of the creditors from the efforts of the trustee in undoing the bankrupt's own acts." See, Analysis of H.R. 12,889, 74th Cong., 2d Sess. (1936), 28 as noted at 1A Collier, Bankruptcy ¶6.11[4], 857 (14th ed. 1972). A similar interpretation of the Chandler Act is to be noted in a statement by Watson B. Adair, member of the National Bankruptcy Congress, in House Hearings on H.R. 6439, 75th Cong., 1st Sess. (1937) at 29 as quoted in 1A Collier, Bankruptcy ¶6.11[4], at 857 (14th ed. 1972):

"The only important new provision is that, when the bankrupt has transferred his property by way of preference, or by way of fraudulent conveyance, and the trustee discovers this fact, the bankrupt cannot impede the trustee's recovery by claiming exemption out of the property so recovered and which he, himself, had transferred before bankruptcy. It is merely that it is inequitable that a bankrupt, who has transferred his property, should benefit by the action of the trustee in setting aside that transfer, and take away the fruits of the trustee's labor."

Interpretations of Congressional intent in respect to the proviso of Section 6 can be noted in decisions which followed the passage of the Chandler Act. In the case of In re Rogers, 45 F.Supp. 297, 299 (E.D.N.Y.1942), the Court referred to the proviso and noted "[t]hat it was the intent of the Congress, by that amendment, to clear up any uncertainty that there might be, and not to permit an allowance to be made for exemption out of property which is recovered after a preference or fraudulent transfer, is shown by the report of the House Committee on the Judiciary, July 29, 1972, p. 9." The proviso of Section 6 and Congressional intent in respect thereto is also noted in the case of In re Grisanti, 58 F.Supp. 646, 647 (W.D.Ky. 1945), wherein the Court stated that "[i]t was the intention of Congress in enacting this proviso in the 1938 Act to clear up this conflict by making the matter uniform throughout the country and not to permit an allowance to be made out of property which is recovered after a preference or fraudulent transfer." See also, 1A Collier, Bankruptcy ¶6.11[4], 857 (14th ed. 1972); 161 A.L. R. 1009, 1025.

In the briefs submitted in support of bankrupt's claimed homestead exemption, the contention is made that the "substantive question of whether or not an exemption is or is not to be allowed" is not a matter of federal law but is a matter controlled by state court decisions. Bankrupt states that a ' . . . right to exemption is governed by (1) the law of his [bankrupt's] domicile (2) in force at the time of the filing of his petition (3) as construed by the State Court. May v. Gibler, 319 Mo. 672, 4 S. W.2d 769, 772' Bostian v. Bono, 322 S. W.2d 813, 816 (Mo.1959)." In further support thereof, bankrupt cites the cases of Kilgo v. United Distributors, 223 F. 2d 167, 170 (5th Cir. 1955) and Phillips v. C. Palomo & Sons, 270 F.2d 791, 793 (5th Cir. 1959). These cases cited by bankrupt are not applicable to the issue considered herein.

In Phillips v. C. Palomo & Sons, *supra,* at 793, the Court dealt only with that portion of Section 6 which " . . . provides that the Act 'shall affect the allowance to bankrupts of exemptions which are prescribed . . . by the State laws. . . .' 11 U.S.C. A. § 24. Accordingly, we are bound by Texas exemption laws and we must follow the construction Texas courts place on such laws." *Phillips* did not deal with the proviso of Section 6. The Court simply decided, quite appropriately, what property each partner was entitled to as exempt property under the Texas exemption statutes. The Court also noted that, on the facts presented, because the property was exempt, any transfer from the partnership to the individual partners cannot be characterized as a transfer for the purpose of hindering or defrauding creditors under Section 67d of the Bankruptcy Act. Bankrupt attempts to construe this latter statement as somehow relating to the proviso of Section 6. In essence, bankrupt appears, by his reference to *Phillips* and other cases to be noted, to be attacking the finding of the Referee of December 9, 1970, wherein the conveyance at issue was found to be fraudulent and in violation of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act. That order is not in issue herein. The bankrupt failed to petition for review thereon within ten days pursuant to Section 39c or subsequently. The propriety or legality of the Referee's finding that the transfer in question was fraudulent and in violation of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act was properly entered.

Bankrupt also seeks support from the case of Kilgo v. United Distributors, *supra.* Again, bankrupt apparently misconstrues the issue at hand for *Kilgo* does not concern itself with the proviso of Section 6. In fact, in that case the Court actually found that there was no transfer nor any intimation of fraud.

Bankrupt also notes the Fifth Circuit case of Beall v. Pinckney, 150 F.2d 467 (5th Cir. 1945). The *Beall* case is also without support in respect to bankrupt's position for this is another case wherein the issue of fraud remained to be determined. As noted at page 469 of the decision, " . . . the argument by appellee that under the bankruptcy law Beall's homestead can in no event be enjoyed because he did not claim the exemption in his schedule, and because having transferred it to his wife in fraud of creditors it cannot be exempted under 11 U.S.C.A. § 24, *is premature. Whether Beall has transferred his property in fraud of creditors is the thing to be tried in this case.*" (Emphasis added.)

Bankrupt further relies on the cases of Rutledge v. Johansen, 270 F.2d 881 (10th Cir. 1959) and In re Hausman, 209 F.Supp. 219 (D.C.Ga.1962) in support of her claim to a homestead exemption. These additional cases are also not on point. In the *Hausman* case, *supra,* at page 221, the Court was concerned with the transfer of a life insurance policy and in respect thereto noted that:

"This is not a case where the bankrupt is requesting that property be set aside as exempt which had been recovered by the trustee after a preferential transfer by the bankrupt. *It is not disputed that in such a case the bankrupt would not be entitled to an exemption.* 1 Collier, Bankruptcy, § 6.11, p. 849 (14th ed. 1940). This is not a case of 'setting aside property as exempt' at all. The issue here is whether, assuming there is no preferential transfer, the property in question should be abandoned by the trustee to the rightful owner. *Thus stated, the court feels that the above quoted portion of Section 6 of the Act has no application here.*" (Emphasis added.)

The *Rutledge* case stands only for the proposition that a bankrupt has the right to transfer exempt property prior to bankruptcy without constituting a voidable preference. Furthermore, the transfer at issue in *Rutledge* was found to be without fraud.

In her brief, bankrupt notes several Missouri State court cases in support of the following proposition:

"It is a general rule in Missouri that 'the conveyance of a homestead cannot be fraudulent as against creditors, whether it be to a wife or to a third person, and that creditors have no recourse against it.' May v. Gibler Supra, page 772; State v. Diveling, 66 Mo. 375; Davis v. Land, 88 Missouri 436; Hart v. Leete [104 Mo. 315] 15 S.W. 976; Bartels v. Kinninger [144 Mo. 370], 46 S.W. 163; Rose v. Smith [167 Mo. 81] 66 S.W. 940; Spratt v. Earley [Early 169 Mo. 357] 69 S.W. 13; Stan [Stam] v. Smith [183 Mo. 464] 81 S.W. 1217; Reed Bros. v. Nicholson [189 Mo. 396] 88 S.W. 71; Seilert v. Mc Anally [223 Mo. 505] 122 S.W. 1064; Armor v. Lewis, [252 Mo. 568], 161 S.W. 251, Bostian v. Jones, Sup., 244 S.W.2d 1; Moberly v. Watson [340 Mo. 820] 102 S.W.2d 886."

Bankrupt notes in particular the Missouri State case of Bank of New Cambria v. Briggs, 236 S.W.2d 289 (Mo. 1951) as the "case most closely on point." In respect thereto, bankrupt states that ". . . it holds that a conveyance by a husband of land to himself and his wife by the entireties although fraudulent as to his judgment creditor, does not invalidate the entirety homestead interest—only the excess above the homestead value would pass to creditors."

The Missouri State cases do not deal with the proviso of Section 6 and the issue considered herein. It might be noted that the case of Bank of New Cambria v. Briggs, *supra*, which the bankrupt states is the "case most closely on point," is again, an action to set aside certain conveyances as fraudulent. The Court there decided the issue of fraud and also noted that ". . . the conveyance of a homestead cannot be fraudulent as against creditors. . . ." The issue whether the conveyance in question was fraudulent as to creditors is not considered herein for this matter was decided by the Referee on December 9, 1970, and no review thereof was sought. For present purposes, the finding of the Referee in respect to his order of December 9, 1970, was correct, and the effect of the proviso of Section 6 as applied to that finding is the question under review herein.

It is conceded that the Bankruptcy Act does not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the laws of the State in force at the time of the filing of the petition in the State wherein they are domiciled, in the absence of fraud or a preference. See, § 6 of the Bankruptcy Act, 11 U.S.C. § 24. Further, the interpretation of the nature of state exemption rights in homesteads must come from state law in the absence of fraud or a preference. Patten v. Sturgen, 214 F. 65 (8th Cir. 1914); Bostian v. Bono, 322 S.W.2d 813 (Mo.1959); 1A Collier, Bankruptcy ¶6.15, 876 (14th ed. 1972). However, when Congress added the proviso to Section 6 of the Bankruptcy Act, it determined certain circumstances and conditions under which a bankrupt may be disallowed state exemptions and a determination in respect thereto is to be a matter of federal law and determined under federal law by the Bankruptcy Act. Gardner v. Johnson, 195 F.2d 717, 719 (9th Cir. 1952). "The act, however, by virtue of the proviso in § 6, now definitely deals with the situation where there has been an avoidance or recovery under the Act of property previously transferred or concealed by the bankrupt. *Under such circumstances state law has been superseded by the provisions of the Act.*" (Emphasis added.) 1A Collier, Bankruptcy ¶6.11[1], 847 (14th ed. 1972). A brief review of the applicable cases renders additional support to this position.

In one of the earlier reported cases to apply the proviso of Section 6, the

Court, in the case of In re Grisanti, 58 F.Supp. 646, 647 (W.D.Ky.1945), stated that:

"This provision [proviso clause of Section 6] is new in the Chandler Act of 1938. Before that time the decisions were in conflict as to whether the bankrupt might claim his exemptions from property which had been transferred or concealed but recovered by the trustee. Since there was no express provision on the subject in the Bankruptcy Act, most of the decisions followed the applicable state law. . . . It was the intention of Congress in enacting this proviso in the 1938 Act to clear up this conflict by *making the matter uniform throughout the country and not to permit an allowance to be made out of property which is recovered after a preference or fraudulent transfer*. In re Rogers, E.D.N.Y., 45 F.Supp. 297; Collier on Bankruptcy, 14th Ed., Section 6.11, pages 838 through 840. *Under this provision of Section 6 the claimed exemption was properly disallowed by the Referee*." (Emphasis added.)

This view was affirmed by the Ninth Circuit in the case of Gardner v. Johnson, 195 F.2d 717 (9th Cir. 1952) wherein the Court reversed the trial court and denied the bankrupt's claimed homestead interest from the asset transferred and subsequently recovered by the trustee. The decision in *Gardner* was subsequently noted and followed in the case of In re Sherk, 108 F.Supp. 138 (N.D.Ohio 1952) wherein the Court noted that

" . . . a bankrupt should not profit at the expense of the creditors from the efforts of the trustee in undoing the bankrupt's own acts."

■ The record presented herein, and the thrust of the Chandler Act legislation, in combination, warrant a finding by this Court that bankrupt is not entitled to her claimed homestead exemption.[12]

The record reveals that the Referee made a finding in respect to the attempted transfer in question of January 26, 1968, that it was without fair consideration, that the bankrupt's defense thereto. was made in bad faith and that said transfer was made with *actual intent* to defraud creditors. This finding is approved by this Court in the absence of a petition for review and because there is no indication that the same was clearly erroneous. Equitable Life Assurance Society v. Deutschle, 132 F.2d 525 (8th Cir. 1942); Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); First National Bank of Portland v. Dudley, 231 F.2d 396 (9th Cir. 1956); Bankruptcy General Order 47; 2 Collier, Bankruptcy ¶ 39.28 (14th ed. 1972).

■ The record in this case also reveals that bankrupt consistently and throughout the proceedings below ignored and refused to obey orders of the Referee in respect to the surrendering of the real estate in question. The bankrupt's actions in respect to her refusal to surrender the property, even upon threat of contempt and eviction,[13]

---

12. In the applicable federal cases noted herein, the bankrupt generally attempted to claim an exemption in property previously transferred and recovered by the trustee, by filing an amended schedule and claiming such exemption for the first time therein. In the case at bar, bankrupt did not claim an exemption in the transferred property in her original schedules filed herein with her petition on February 5, 1968. However, she did make a claim to such exemption in her amended schedules which were filed on May 2, 1968. This amended schedule was filed before the order of December 9, 1970, wherein the Referee held the transfer in

question to be in violation of Sections 67d(2)(a) and (2)(d) of the Bankruptcy Act. See Footnote 3, *supra* for a statement of these Sections.

13. On April 17, 1972, the Referee directed the United States Marshal to physically remove the bankrupt from the premises on May 1, 1972. This order was orally revoked on May 1, 1972, and on May 4, 1972, a show cause eviction order was issued. On May 18, 1972, the Referee again directed the United States Marshal to physically remove the bankrupt from the premises on June 1, 1972. Then on August 11, 1972, the Referee issued another show cause eviction order

are particularly important in light of the fact that she was offered her claimed homestead exemption upon condition that she surrender possession concurrently therewith.[14] Yet, after refusing to accept the Referee's offers[15] of the homestead exemption upon surrendering the premises, bankrupt now claims she has been grievously injured and that she is being unlawfully deprived of her right to her homestead exemption. Such inconsistent conduct on the part of the bankrupt, in light of the Referee's findings of actual intent to defraud creditors, comes within the letter and spirit of the Chandler Act legislation and the applicable federal cases noted herein. Bankrupt " . . . should not [be permitted to] profit at the expense of the creditors from the efforts of trustee in undoing the bankrupt's own acts." In re Sherk, *supra* at 142. Furthermore, this Court should not accept and reward inequitable conduct, Heiser v. Woodruff, 327 U.S. 726, 66 S. Ct. 853, 90 L.Ed. 970 (1946), reh. denied 328 U.S. 879, 66 S.Ct. 1335, 90 L.Ed. 1647 (1946), nor countenance the wrongful use of the homestead right. See, Mansell v. Carroll, 379 F.2d 682 (10th Cir. 1967).

Bankrupt has failed to present to this Court any additional facts or legal contentions and applicable cases in support thereof which would justify disapproval of the findings and conclusions of the Referee in respect to his order of June 20, 1973.

Upon a full review of the record and the respective briefs presented herein in regard to the issues raised, it is hereby concluded that, based independently on the findings of the Referee and the misconduct of the bankrupt heretofore noted, and upon the application of the spirit and letter of the proviso of Section 6 of the Bankruptcy Act as construed and applied by the applicable federal cases, the bankrupt herein is not entitled to her claimed homestead exemption and the disallowance thereof by the Referee in his order of June 20, 1973, was not in error.

For the foregoing reasons, it is therefore

Ordered that bankrupt's petition for review of the Referee's order of June 20, 1973, disallowing the bankrupt's claimed homestead exemption, be, and it is hereby, denied. It is further

Ordered that the Referee's order of June 20, 1973, disallowing the bankrupt's claimed homestead exemption, be, and it is hereby, affirmed. It is further

Ordered that the orders entered in this cause on September 28, 1973, and the supplemental memorandum and order entered on October 3, 1973, be, and they are hereby, vacated. It is further

Ordered that the Referee in Bankruptcy be, and he is hereby, authorized to proceed with the processing of the above-entitled action to final termination.

---

and also directed the bankrupt to show cause why she should not be held in contempt for failure to remove herself from the premises.

14. On March 28, 1972, upon the application of the Trustee and consent of the bankrupt, an order was entered authorizing the bankrupt to quit claim her interest in the real estate to the Trustee in conjunction with the authorization by the Trustee to pay the

bankrupt her three thousand ($3,000.00) dollar exemption " . . . upon the day she voluntarily moves totally from the premises. . . ." Then on May 31, 1972, the Referee again directed the Trustee to pay the bankrupt her homestead allowance, said payment to be " . . . concurrent with Trustee's actual possession of the property."

15. See Footnote 14, *supra*.